We proceed to our final case today, Dunlap v. Cottman, and we'll hear from, is Professor Rutledge before us? Yes, Judge Winn. Good to have you here. Thank you, sir. Thank you for the opportunity. May it please the Court, Peter Rutledge on behalf of the appellant, Mr. Jim Dunlap, who's in the courtroom with me today. By prior arrangement with this Court, a student at the University of Georgia, Ms. Crystal Johnson, will present our opening argument. I will remain at counsel's table both to present our rebuttal and to answer any question at any time the Court wishes to propound directly to me. Thank you. Thank you, Professor. Ms. Johnson? May it please the Court, Judge Winn, Judge Diaz, Justice O'Connor. My name is Crystal Johnson, and I represent the appellant, Mr. James Dunlap. This case is about the destruction of Mr. Dunlap's 30-year investment in two AMCO franchises and the District Court's premature dismissal of his claims seeking to vindicate those injuries. There are two issues before the Court today. First, whether his claims for tortious interference fall within Virginia's five-year statute of limitations governing injury to property, and second, whether he adequately alleged the unlawful element of Virginia's business conspiracy statute. If the Court agrees with Mr. Dunlap on either of these issues, then reversal is proper. Turning first to the statute of limitations, Virginia's Supreme Court just last year reiterated a principle it declared was well settled over half a century ago, and that is that contract rights are property. And in Virginia, where the statute of limitations is determined by the type of injury alleged, an action for injury to contract rights falls within the five-year statute of limitations. This principle is the very reason that the Virginia Supreme Court recognizes the common law cause of action for tortious interference with contract. And although this may run contrary to what your intuition of what property is, that is where Virginia law stands. Indeed, in Willard v. Moneta Building Supply, the Virginia Supreme Court, in a case very much like this one, found that stockholders' dissenter's rights and an action for injury to those rights was an injury to property under the five-year statute of limitations. We've got cases on both sides of this, though, don't we? I mean, there are some cases that go the other way. You've acknowledged the ones in your favor, but aren't there other cases that would interpret this somewhat different? You slid us something about intuition. That's supported by something, isn't it? It is supported, but not by the Virginia Supreme Court. In Willard, and in an unbroken line of precedent, the Virginia Supreme Court has held that contract rights are property. In Willard, the court clarified that these property rights are part of the bundle of sticks contained in that case of shareholder's agreement, which is a form of contract, and those rights can be created either by statute or by the contract agreement itself. And an injury to one of those rights is an injury to property under the five-year statute of limitations. Well, I mean, the specific case that you mentioned deals with dissenter's rights in the context of shares of stock. What is the particular property right that's at issue here, separate and apart from your client's disappointed economic expectations, which, in fact, that's all there is to it, is not governed by the five-year statute of limitations? Well, to clarify, the concern with disappointed economic expectations is that economic expectations are the measure for contract remedies, and the case finding that contract is the proper remedy for disappointed economic expectations was dealing with the line between actions for contract and actions in tort, not in the line between actions for injury to the person or injury to property. Economic expectations is a measure for contract damages because contract damages are limited to the damages that are reasonably foreseeable when the contract is entered into. You're saying that that doesn't really address the issue of which statute of limitations applies? Correct. That concern is not relevant here. The concern is whether the action is for an injury to property and turns only on the fact that contract rights are property rights and injury to contract rights are injury to property rights. And just like in Willard, where the loss of the ability to exercise a dissenter's right was an action for injury to property, here the contract contains not only itself as a whole, one big property right, but individual rights that are contained therein that add or detract from the value of the overall contract, and injury to each of those rights is injury to property. And the district court relied on a misreading of Statute No. 2 that interpreted Statute No. 2 as overruling this line of precedent that found that contract rights are property. However, Statute No. 2 did not go so far. Statute No. 2 did not address property or statute of limitations. It merely, quote, retracted dicta that had converted a common law cause of action for conspiracy to breach a contract into a statutory action for conspiracy to breach a contract. But it left intact the rest of Worry v. Bowes, the case that it was modifying, and Worry v. Bowes is the half-century-old precedent that has been relied on since to find that contract rights are property in Virginia. And indeed, not even the appellees. Well, the key for us is how the Virginia Supreme Court would treat it, right? Yes. And is it the case that they would regard Dunlap's injury as personal rather than a property injury? No. They would regard this as an injury to property because the injury was to his contract rights and to his franchise, and those are property rights. Well, it seemed to me that Dunlap is alleging a claim for disappointed economic expectations. And that all that was injured was that expectation. To clarify, Sensenbrenner, the case that first declared this economic expectations issue, it was dealing with the difference between contracts and torts. And in that case, its concern was with the measure of damages. Well, it certainly is an issue of Virginia law. Yes. And disappointed economic expectations. And I think it's an open question there on this, and I wonder if we should certify a question to Virginia Supreme Court. Certification of this question is not necessary because if you look back to— It doesn't involve, really, a federal interest. And I just—it's purely state, and I wonder if we shouldn't just ask Virginia. If this court finds that this is not governed by Willard v. Moneda and the analogy to the center's rights, then yes, certification may be proper. But the analogy to the center's rights is very much on point here. The appellees don't even contend that the district court's interpretation of Station No. 2 was correct. And under the line of reasoning in Willard and this principle that was actually reiterated since Station No. 2 was decided that contract rights are property and that the—excuse me, that contract rights are property rights that are entitled to the protection of the courts. This principle was reiterated in 2012 in a case called Wyatt v. McDermott. And thus, the fact that the injury to these contract rights is an injury in tort and falls under the five-year statute of limitations is directly governed by that precedent. And finding so actually aligns this cause of action and this type of injury with the five-year statute of limitations that governs actual breaches of contract. Thus, finding contrary would actually mean that tortious interference with the contract would have a different statute of limitations than the actual underlying breach that the tortious interference caused. Well, I just think it's a close question. And maybe the thing to do is to ask Virginia Supreme Court what the answer is. Well, that would be advisable. I think this case is similar enough to Willard v. Moneta that certification is not required here. Not only advisable, you probably would like us to do it if we're going to lean toward it being a disappointed economic expectation. I take it. Well, yes. Because you think the Supreme Court will come out differently on it. No, we don't think that the Supreme Court would come out differently, but we don't think that the delay is necessary here. Well, if we rely on Willard, then the allegation here is just nothing more than disappointed economic expectations, and that's not an injury to property. Disappointed economic expectations, as interpreted by the Virginia Supreme Court, is the measure of damages for breaches of contract. Yes, they would have us look to the law of contracts. And breaches of contract are governed by a separate five-year statute of limitations under Virginia law. So finding that the tort of interference with the contract is also subject to the five-year statute of limitations actually brings the tort of tortious interference in line with the breach of contract cause of action. If there are no further questions, I'll turn to the conspiracy issue. Proceed. In considering this, it is important to keep a few facts in mind. Mr. Dunlap's life work was his 30-year investment in these two AMCO franchises. This relationship continued successfully over three decades until his presence in the market became inconvenient to the Appleys and to AMCO. Then a Cotman executive declared their intent to, quote, squash him out of the market to make room for new Cotman franchisees that are converted into the AMCO brand. The plot that ensued, designed solely to put Mr. Dunlap out of business, violated three duties, each of which independently satisfies the unlawful act element of the Virginia business conspiracy statute. As stated, they tortiously interfered with his contractual relationships, they tortiously interfered with his business expectancy, and they facilitated AMCO's breach of their statutory duty by canceling his franchise agreement without reasonable cause. Well, we have to look to Virginia law here, do we not? Yes. There's no federal interest? No, this is a pure state law claim. And under Virginia law, tortious interference violates a common law duty not to interfere with certain legally protected relationships between third parties. And that is all that Station No. 2, relied on by the district court, requires. Under Virginia law, to plead a claim for a statutory business conspiracy, you must allege at least a violation of either a statutory or common law duty. And Mr. Dunlap alleges three such duties. The duty not to interfere with a contractual relationship is a common law cause of action recognized by the Virginia Supreme Court to protect parties from undue interference with, excuse me, to protect their property interests in their contracts, as was earlier stated. Excuse me. How is Station No. 2 distinguishable from this case here? I mean, you've got three parties involved there, you've got this allegation, and the court says it's a contract. And what you're trying to do is enforce a breach of contract type situation. The difference between this case and Station No. 2 is that neither appellee has a contractual relationship with Mr. Dunlap, but in Station No. 2, the court explicitly found that both defendants had contractual relationships and were in contractual property with the defendant, and therefore the remedy there was in breach of contract rather than in statutory conspiracy. And notably there, the court recognized that nonperformance of a contractual duty can give rise to liability in both contract and in tort. So the question is not whether the tort is completely, can be completely severed from any contract that ever existed. The question is whether the duty imposed is a duty that the parties only assume affirmatively by contract, or whether it's a duty that is imposed extrinsically by common law or by statute. And the principle behind that is not to award tort damages for duties that you only affirmatively assume, but rather limit those damages to the ones that are foreseeable at the outset of the contract. We don't have to draw a line between injury to the person and an injury to property here. No. I think you do. And is there a Virginia Supreme Court case directly in point? Yes, actually. What is it? Advanced Marine Enterprises, which Station No. 2 explicitly held was still good law. That case is very factually similar to this case. There the defendants knew of the existence of contractual relationships, wanted to pull the rug out from under another business, knew that implemented a plan to essentially take over the business of another party, and went about that plan despite the fact that they knew that those actions would constitute actionable tortious interference. Here the appellees knew that both Cotman and Amco had 14 franchise agreements in the Tidewater area. They declared their intent to close two of those locations in order to come in compliance with their marketing agreement with each of those franchisees. They knew that they would have to either be in breach of their marketing agreement or be in breach of two of their franchise agreements by canceling them. They declared their intent to cancel two of those. And then they followed by canceling Mr. Dunlap's two franchises, which is at issue here. Those same facts supported a claim of statutory business conspiracy in Advanced Marine Enterprises. You rely upon the focus on the duty, or the lack of duty, where there's no privy contract in assessing Station No. 2, but what about the harm? The harm, at least from the perspective of the other side, appears to arise as a result of a contract breach. Why is that not the determinative factor here? Because the harm is not merely in the breach of the contract. The harm is in the tortious interference with the contract. And I see my time is up. May I finish the question? Please. The harm is in the interference with the contract, and the purpose of the conspiracy statute is the damages incurred as a result of those damages. The conspiracy statute explicitly recognizes that conspiracy to injure business is a particular type of evil that is not adequately addressed by the common law cause of action. And here that tortious interference violates a third-party duty is the damage more than just the breach of contract. Thank you. Questions? All right, thank you, Mr. Johnson. You have a few minutes for rebuttal. We'll hear from Mr. Rubinger. Good morning. May it please the Court, my name is James Rubinger. I represent the Appalese-Cotman Transmission and Todd Leff. This is a case arising out of a franchisee's unhappiness with its franchisor. The franchisor is not a party to this case. The franchisee and the franchisor have been in litigation almost constantly for the past six or seven years. But in this case, the franchisee has chosen to... Speak up, please. It's hard to hear you. I apologize. In this case, the franchisee has chosen to sue an affiliate of the franchisor as well as the president of both affiliates as well as the parent company. That's somewhat significant, at least when we're looking at Station No. 2, is the fact that he's not suing someone in which there's a contract involved. So there's no privy between plaintiffs and defendants in that perspective. That's correct. And the reason they have not sued AMCO arising out of these claims is because they already did sue AMCO arising out of these claims, and they settled those claims back in 2007. And that was a breach of contract? That was a breach of contract. But this is dealing with tortious interference in which there's no contract involved. It is a third party alleged to have interfered with a relationship, your business relationship. That's correct, but I accept for the point where you say there's no contract involved. There's no privity, but there absolutely is a contract involved. The claim is tortious interference with a contract. And the Station No. 2 case, I think the Station No. 2 case is absolutely dispositive of the business. How would you recover a breach of contract damages from a tortious interference? Is that what you get? No, you get tort damages. You get business expectancy damages. And if it's appropriate, punitive damages and all the rest. That's why, and under the statute, you get treble damages and attorney's fees. And there are criminal sanctions as well. Well, how do you draw the line between an injury to the person and injury to the property in a case like this one? Well, with respect to the business conspiracy statute or with respect to the statute of limitations? Both. Okay. The business conspiracy statute, I don't think you have to reach that issue. I do think that with respect to the business conspiracy statute, I think Station No. 2 makes it very clear that, and the Supreme Court chose its language very carefully, it doesn't say we're not going to allow claims if there's a breach of contract somewhere. What it says is, and I'll quote it, it's quoted in the brief, a conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract. If there's no contract in this case, there's no case. If there's no franchise agreement between Mr. Dunlap and AMCO, there's no claim. Well, you could read that language as simply stating that whatever duties arise between parties to a contract can't possibly be the basis for a statutory conspiracy case. That's different than saying that an outsider to a contract does not commit a statutory conspiracy by interfering with the contract rights of those parties. That's what we have here. I don't think that that's, I think that language and the context of Station No. 2 makes it very clear that what the Supreme Court is saying is you cannot base your harm, you cannot base your claim of harm under the business conspiracy statute under mere breach of contract. Privity or otherwise, it doesn't matter. Privity or otherwise, it doesn't matter. But this case involves, the Station No. 2 case, involves a contract and parties to a contract. We have a different set of facts here. And perhaps the best course of action is, as Justice O'Connor recommended, having the Virginia Supreme Court sort this out. I think that Station No. 2 first involves parties to a contract. It also involves a non-party to the contract. And I don't think it should make a difference to this case whether AMCO was a party to this case or not. And, in fact, the fact that AMCO can't be a party because the claims have already been adjudicated or settled in this case. Who's the non-party in Station No. 2? You got the developer, you had the lynchers. You have the neighbor that was going to provide access to its property such that repairs could be made and then refused to do it. I think that. But he couldn't provide it without the developer agreeing to provide it. Correct. That's contract that has to deal with the developer. You can't separate the two. But the claim there was conspiracy to breach the contract. It wasn't just breach of contract. That's the distinction Judge Diaz is bringing out is that you've got those contracts. You don't have that here, at least in terms of when you focus on that word duty, from the statement you read, you don't have that same level of duty here. You've got a tortious interference with a relationship involving two other entities. But I don't think that you can say that a duty that's independent of the contract. The court doesn't say different from the contract. It says independent from the contract. I think it's very clear that what in Station No. 2 the Supreme Court was trying to do was to make it very clear that we're not going to countenance tort or statutory claims where the underlying harm is a mere breach of contract. So Dunlap has no contract. So you can't sue these individual defendants on a breach of contract. And now you say there's no tortious interference action. What could they do? I didn't say there was no tortious interference action. In this instance. I said there's no claim under the business conspiracy statute. That's very different. There's no claim for trouble, damages, attorneys' fees, and criminal conduct when the underlying claim is a contract claim. They could maintain an independent tortious interference action. Sure. Had they brought it within the statute of limitations, yes. They could have raised a claim for tortious interference. Doesn't Station No. 2 suggest that a conspiracy to interfere with a contract might remain viable, and they cited Advanced Marine Enterprises for that proposition? Or at least left the question open? Yeah, I think they left the question open. Advanced Marine Enterprises is interesting. They cite it, actually, for a proposition that's not discussed in the case. I understand why they cited it, because the underlying facts are there. But the issue wasn't raised. The issue wasn't discussed in that case. So I don't think that it's fair to say that the Virginia Supreme Court held something that wasn't raised. But do you think there's a Virginia Supreme Court case actually on point in this case? I think Station No. 2 is as close as you're ever going to find, and I think it is very difficult to believe that the Virginia Supreme Court, given the language of Station No. 2 and the earlier cases, Sensenbrenner and even Willard, that make it very clear that they are adamant about separating contract claims from tort claims. It's very hard to believe the Virginia Supreme Court would decide this case differently than it decided Station No. 2. And that may well be the case, but there is that factor here, that there is no privy to the plaintiffs and the defendants in this case, whereas in those cases there was privy. In those cases there were, but as I read Station No. 2, there's nothing to suggest that that was dispositive at all. I think what the Virginia Supreme Court was making quite clear in Station No. 2 was that when the underlying rights derive from a contract, then there is no business conspiracy claim, that there is no unlawful act under the business conspiracy statute, that a mere breach of contract does not rise to the level of an unlawful act. In fact, what the court says in that case is there has to be an independent tort or statutory claim. And while I understand what the court is saying and what counsel was saying about that, there's also tortious interference here and maybe that's tort and maybe that's an independent duty. Similarly, conspiracy is a wrong as well. Conspiracy is a tort as well. Well, I'm still thinking it's a closed issue to some extent. I mean, you brought up this Turberfield case. That's a case, the Turberfield case, dealing with, I guess it's Western District, Virginia. Correct. And therein you had the court there sort of indicating that if there hadn't been this contract involved here, you may actually have a tortious interference. You may have a tortious interference claim but not under the business conspiracy statute. Well, that was the business conspiracy case, is what I'm saying, that it may still arise in that context if you didn't have this contract. In other words, you're saying there's no third party here without a contract. Right. I'm not sure where you're going with that. Well, I'm going to say that it looks like it's this case. It looks like that. It's essentially saying if there's no privity between the plaintiffs and defendants, then we may hold this differently than what we are holding. But they found that privity in that case. But, again, I think that's just the happenstance of where one of the defendants is a party to the contract. And in this case – Of course, it leads us to speculate on Virginia law again, and it really is uncomfortable when we're doing that in this context because this is sort of developing as we're going along and we're dealing with this instance where you've got these individuals involved, they don't have a contract, and the action is against them for tortious interference with another relationship. It seems like it fits. You can clearly see why it doesn't fit if you've got a contract because it fits within a breach of contract action. You don't want to make a breach of contract action a tortious interference one. That's a whole different matter. But it looks like it's a little cloudy, at least what's going on here. That's why Justice O'Connor suggested to the extent that maybe it might be something to certify. Well, let me talk about certification for a moment with respect to both issues. First, I find it interesting that the appellant never asked for it. We prevailed below. We didn't think we needed to ask for it. We think the district judge got it right. We do that all the time. A lot of these cases come up here. I don't remember many of them where they come up and ask for it. Not many of them come and say certify this to the Supreme Court because they really would rather win it here as you would. When you look at it in its purest form, what's the harm in certifying any question to the Supreme Court? Basically, you just cover your bases and get it right. Outside of that, you're saying, well, the law must be so clear, you ought to go ahead and answer it. Of course, we tried that in one of these cases here. We went back and tried to tell them what property and entry was. I think the Supreme Court kind of indicated we weren't so correct on that. That kind of puts us in a position where this avenue is a pretty simple procedure and either the answer is they are not. From your perspective, I guess you're not going to worry about it anyway because you're pretty confident that's what the Supreme Court of Virginia is going to do anyway, is that right? I'm all about getting it right. My only concern is time and money. This case was filed three years ago. That's understandable. Sure. The notice of appeal was filed 18 months ago, so we've been at this a long time and we'd like to get a resolution. I'm sure you would. Let me say very briefly one other point with respect to the business conspiracy statute, which was not raised in oral argument but was raised in their reply brief, and I'd like to address it. We had raised the intracorporate conspiracy doctrine, which I do think applies to this case. In their reply brief, the appellant refers to the personal stake exception, which would apply to Mr. Leff. They say Mr. Leff had a personal stake in the actions taken against Mr. Dunlap. I just want to address that. In Virginia, the personal stake must be something that is independent of the corporation's interest. There's that word again, independent. In this court's decision in the E-plus case, 313F3-166, the court made it very clear that the corporate officer's interest had to be independent of the corporation's interest. There's a district court case more recently than that that has a very lengthy explanation and holds that when the interest of the employee, agent, and the corporation are aligned, there's no personal stake exception. That's Baylor v. Comprehensive Pain Management, 2011 Westlaw 1327396. Well, I mean, there's another reason, though, for having some concern about whether this doctrine applies here. We're not dealing with wholly owned subsidiaries. That's correct. You do have to take—well, that does not apply with respect to Mr. Leff, but with respect to the wholly owned subsidiaries, you're right. I'm not aware of any case, nor have you cited any case, where a court has applied, I don't think, this doctrine in a fact scenario such as this when we're not dealing with wholly owned subsidiaries. I do believe there are cases involving parent and non-wholly owned subsidiaries, but not two non-wholly owned subsidiaries. The complaint alleges that both are, I believe, 78% owned. If that's not a controlling interest, I don't know what is. But I was really just addressing the issue with respect to Mr. Leff, and I'll make one more point and then move on. In the Baylor case, it makes the point that there are a number of cases in Virginia, and it lists them, that have held that the personal stake exception doesn't even apply to the business conspiracy statute in Virginia, and that there are no Virginia cases holding that it does. So we think, at a minimum, that gets Mr. Leff out of this case, and with respect to the others, we do have the wholly owned subsidiary case, but I think that the rationale of the cases certainly applies. I have five minutes to talk about the statute of limitations. Is this an injury to the person or an injury to property? I would suggest that it's an injury to the person. It is conduct directed at the person, just as in the Piggott case, which was not discussed in their presentation. I think the Piggott case is determinative of this one. This is more like this than like that, than it is like Willard. In that case, the court held that the action was directed to the person, not to the property, whereas in Willard, the action was directed to the stock ownership rights. And again, in Piggott, the court said that the damage was financial damage, personal to the individual, same situation here. That the conduct was directed to Mr. Dunlop is indicated by their complaint, where they say that the motive of the defendants was to squash him like a bug, not to damage his contract, but to squash him like a bug. Furthermore, we come back to this dichotomy between tort and contract. This is not a claim for breach of contract. This is a claim for tortious interference. The Virginia Supreme Court, in the Wyatt case, defined the tort of tortious interference as, quote, the common law right to be free from interference in contract. Not a property right to be free from tortious interference. There may be a property right in the contract, but this is a tort. It's a common law right to be free from interference. There's no property right in the freedom from interference. If you're right about that, and this was not something that was brief, but I'll ask it now before you run out of time, does that mean that the statutory conspiracy claim would also be governed by a two-year statute of limitations because it rises and falls on the merits of the tortious interference claim? I mean, the district court didn't address that. It dismissed it for failing to state a claim, but I'm curious as to whether that would be an independent ground to dismiss that claim as well. It may be, and I honestly don't recall whether there's a separate limitations period for statutory claims. There may be, but there is, and you can ask a question that wasn't brief. I'll make a statement that wasn't brief. There is also a catch-all provision in the limitations. It's a two-year limitation for any personal action, which is defined as any claim for which money is sought, that's not otherwise provided for, and that's in 8.01-248. I think it's interesting and noteworthy that the limitations statute that we're talking about was enacted by Virginia in 1977. The tort of tortious interference was not recognized by the Virginia Supreme Court until 1985 in the Chavis case, which is cited in their reply brief. I think that it's quite possible, it's quite likely, that the right analysis here is not to try to pigeonhole tortious interference into injury to person or injury to property, but rather it's not provided for otherwise because it didn't exist when the statute was enacted so that we fall under the two-year catch-all. I will make one other point, and then I'll sit down, or one and a half other points, and then I'll sit down. First of all, counsel indicates that making tortious interference a 5-year statute would bring it in line with a breach of contract statute. That would make Virginia be unusual. They have the same statute of limitations for a tort claim than it does for a breach of contract claim. Most states have much longer breach of contract statute limitations. West Virginia, for example, has a 2-year tort statute and a 5-year contract statute. Georgia has a shorter tort statute than a contract statute. That wouldn't be unusual at all. And to hold that a 5-year statute applied to tortious interference would make Virginians probably the longest in the country. And it's very hard to believe, going back to stage number 2, that the Virginia Supreme Court would permit a tort claim arising essentially out of a contract to have such a long statute of limitations. Maybe that's one more reason to send it to that court. I had a feeling you were going to say that, Your Honor. Thank you. We ask for the court to affirm the district court in all respects. Thank you very much for your time. Thank you, Mr. Rubinder. Ms. Johnson, you have a few minutes. But I see the professor walking to us. I have complete confidence in Ms. Johnson, Judge Winn, but I should alert all of you that she and her fellow students on this case not only are graduating in three days but just completed exams. And we decided that for a variety of reasons, perhaps my delivering the rebuttal would relieve a little bit of the pressure. With the court's permission, I'd like to address two specific facts that were raised in Mr. Rubinder's argument, go directly to the court's collective concern about certification, and then close by explaining simply in a four-paragraph opinion how this court can reverse the district court. As to the two facts. Well, it's not that we're that eager to reverse a court. Oh, but Justice O'Connor, we're very eager that you reverse the district court. Well, I don't think we are. I understand. Judge Winn, you are absolutely right that in the original litigation between AMCO and Mr. Dunlap, Mr. Dunlap did not raise the claims that are being brought here. Conspiracy claims, tortious interference claims were not in the original litigation with AMCO. The second point, Judge Winn, you were absolutely right. I don't hear that very often, but it's nice to hear it. It's the professorial. There was not a non-party in Station No. 2. There were two independent contracts in Station No. 2. There was a contract between the restaurant owner and the landlord to use the space, and there was a contract between the restaurant owner and the neighboring tenant to install sound equipment. As a consequence, the plaintiff was in privity with both defendants and had a contractual remedy available to him, which Mr. Dunlap does not have as to these two appellees. Now let me turn to the issue of certification, because I can understand the court's instinct that there's enough concern here, particularly after the Virginia Supreme Court chided this court's Brown decision concerning the statute of limitations of not making that mistake. To be clear, there is a harm to Mr. Dunlap in certification. The harm to Mr. Dunlap is that he has gone a number of years without receiving any relief, without receiving a day in court. Now that's not to say certification should under no circumstances occur. To be sure, we would far prefer certification to affirmance. But I don't want the court to be misled into thinking that Mr. Dunlap would be left without any harm suffered if it's certified. Mr. Dunlap has not recovered a dime for the wrongs that were allegedly done here. The settlement that occurred in 2007, which can be found and which is publicly available on the docket of the 2011 litigation that AMCO also has brought against Mr. Dunlap, makes clear that Mr. Dunlap has not received a dime for the wrong done to his company. Maybe he has to wait longer, but we believe that he should not. Let me turn to the four-paragraph opinion. Paragraph 1. This case arises on a 12b-6, and therefore this court needs to take as a given all of the flaks properly pled that Mr. Dunlap was in compliance with his franchise agreement when the termination was attempted, that the termination post-dated offers by Mr. Leff and AMCO and Kottman employees to convert Kottman franchises to AMCO franchises, that the alleged termination occurred within days of this announcement that Kottman and AMCO, now under common ownership of a private equity company, were going to squeeze out this consolidated market. Paragraph 2. And this is the most important statement in Mr. Rubinger's argument. Mr. Rubinger does not question that the tortious interference with contract and the tortious interference with business expectancy claims are properly pled, that they are plausible under the Supreme Court's decisions in Iqbal and Twombly. At docket number 5, entry of the district court docket in this case, you can review the motion to dismiss, and nowhere in that motion to dismiss does Mr. Rubinger seek dismissal of those two claims on the argument that they failed to allege sufficient facts. Paragraph 3. As a consequence of properly pled tortious interference claims, they advance if they are timely. That takes me to your question, Justice O'Connor. Is there a Virginia Supreme Court decision that establishes unambiguously that these claims are timely? My answer is yes. And that answer is the Virginia Supreme Court's decision in Worry v. Bose, which held that where defendants were in contractual privity with the plaintiff and breached that contract, or where there's an interference to that contract, that violates a property right, constitutes an injury to property. Now, it's true that in the Willard case they picked up on the sense and brainer decision which said disappointed economic expectations are not injury to property. But as Ms. Johnson made clear, when the Court's talking about disappointed economic expectations, it's not talking about statute of limitations. It's talking about Virginia's historic privity rule with respect to negligence actions against parties that are not in privity with the plaintiff. It's not talking about statute of limitations. Had Willard not thrown... Yes, sir. Paragraph 4. When you give those exams... What's that? When you give them exams and that time is up, you sort of tell the students time's up. My daughter jokes that law professors know how to talk lots and ask questions but never answer them. Thank you very much for your argument. Thank you very much, Judge Wynn. We encourage the Court to reverse and remand on both counts on the basis of Worry and the Virginia Supreme Court's decision in advance Marine and this Court's decision in T.G. Slater. Thank you. Thank you, Professor, and thank you, Ms. Johnson, and the University of Virginia School of Law Appellate Litigation Clinic. Thank you, Mr. Rubinger. And, of course, the Court, I will take the privilege on behalf of myself and Judge Diaz and the rest of the members of this Court, we particularly thank Justice O'Connor for her graciousness of sitting with us today. The Court will be adjourned and we'll come down to Greek Council and proceed. Court.
judges: Sandra Day O'Connor, James A. Wynn, Jr., Albert Diaz